Whitaker, Judge,
concurring:
In dissenting in J. P. Morgan & Co. v. United States, 136 Ct. Cl. 748, 1 stated that in my opinion the amount refunded was “based upon” the allowance of a credit for State inheritance taxes paid. I am still of the opinion that section 813 of the Internal Bevenue Code of 1939 prohibits the payment of interest on such a refund. In the instant case, however, the refund could not be based upon the allowance of such a credit because the State taxes were paid prior to the filing of the Federal estate tax return. Since this prepayment was permitted by State law, the taxpayer could take the credit on his estate tax return at the time it was filed. Unless it later resulted that the taxpayer paid additional State taxes, which was not the case in the instant suit, the subsequent refund of Federal estate taxes could not be based upon the allowance of a credit for estate taxes paid.
Jones, OMef Judge, joins in the foregoing concurring opinion.
JBTNMNGS OP PACT
The court, having considered the evidence, the report of Trial Commissioner Bichard H. Akers, and the briefs and argument of counsel, makes findings of fact as follows:
1. The plaintiff, Guaranty Trust Company of New York, is a New York corporation with its principal place of business in New York City, and the plaintiff, Joseph A. Zock, is a citizen of the United States and resides in New York City. *740 They are the duly appointed and acting executors of the Estate of Richard N. Ryan who died a citizen of the United States on September 17, 1949, and who will hereinafter sometimes be referred to as the “decedent.”
2. On December 18, 1950, the plaintiffs duly filed a Federal estate tax return on account of the decedent’s estate. That return showed a total gross estate of $4,508,509.72, total deductions of $1,222,911.03 and adjusted gross estate of $3,285,598.69, a net estate for basic tax of $3,182,932.46, a net estate for additional tax of $3,222,874.59, and a net estate tax payable of $1,179,648.26, which was paid on the same day the return was filed. That return also indicated that a credit against the estate tax was claimed for State estate, inheritance and legacy taxes in the amount of $208,-361.51, which amount was computed by taking 80 percent of the gross basic tax of $260,451.89. No deduction was claimed on that return for the marital deduction under section 812 (e) of the Internal Revenue Code of 1939 but there was set out under schedule M thereof the following statement:
On or about March 21, 1950, the decedent’s surviving spouse caused to be served upon the Executors a notice of election to take against the Will, pursuant to the provisions of Section 18 of the New York Decedent Estate Law. The Executors are uncertain as to the effect of this notice of election and have instituted a proceeding, which is now pending in the Surrogate’s Court, wherein, among other things, the effect of said notice of election will be determined. Should the Court determine that any assets of the estate pass outright to the surviving spouse or in such other manner as meets the requirements of Section 812(e) of the Internal Revenue Code, a proper deduction therefor will be claimed.
3. On December 17, 1951, the Surrogate’s Court of New York County issued a decree relating to Mrs. Ryan’s right to take against the will of her husband. Subsequently, the New York Supreme Court, Appellate Division, First Judicial Department, modified the above decree by an order dated July 1, 1952. Thereafter, the Surrogate’s Court, by decree on remittitur dated January 8, 1953, made the order of the Appellate Division its order and ordered that its decree dated *741 December 17,1951, be amended in accordance with the order of the Appellate Division. The above-mentioned decrees and order determined that Mrs. Eyan was entitled to receive outright assets of the decedent’s estate in an amount to be determined in accordance with the formula set forth therein.
4. Thereafter, in view of the assets to pass outright to Mrs. Eyan pursuant to the above orders and decree, and under New York Surrogate’s Court Act, section 200, as property set off to Mrs. Eyan, the Internal Eevenue Service determined that there was allowable and finally allowed to the estate as a marital deduction under the provisions of section 812 (e) of the Internal Eevenue Code of 1939 the sum of $578,281.34, as shown in finding 13.
5. As a result of an examination of the estate tax return, the Commissioner of Internal Eevenue (hereinafter referred to as the “Commissioner”) issued a statutory notice of deficiency against the executors on November 20,1953, asserting a deficiency of $83,293.25. Since a petition was not filed in the Tax Court of the United States for a redetermination of the deficiency, that deficiency plus interest was assessed on March 18, 1954. The preliminary statement of tax liability attached to the statutory notice read as follows:
The deficiency here results principally from adjustments made with respect to Schedules B, F, and G; and allowance of marital deduction not claimed on filing return. Due to inability to obtain necessary information in time no informal conference was held. Eepresenta-tives of the estate requested and are in agreement that 90-day letter be issued.
Schedule B, referred to in the above statement, relates to “Stocks and Bonds” in which the amount shown on the return of $2,700,930.10 was increased to $2,722,161.23, that is, an addition of $21,231.13. Schedule F relates to “Other miscellaneous property” in which the amount shown on the return of $573,372.57 was increased to $701,240.73, that is, an addition of $127,868.16. Schedule G relates to “Transfers during decedent’s life” in which the amount shown on the return of $912,468.19 was increased to $1,142,732.26, that is, an increase of $230,264.07. Funeral and administration expenses were decreased from $354,330.69 to $266,109.75, that *742 is, a decrease of $88,220.94. A marital deduction was allowed in the amount of $525,958.12. It was also stated in that statement that in determining the deficiency, credit for State estate, inheritance, legacy or succession taxes had been disallowed in whole in the amount óf $198,012.41, that is, 80 percent of the corrected gross basic tax of $247,515.51 shown in this statement, but that if complete credit evidence were filed a net overassessment of $114,719.16 would result.
6. On December 17, 1953, the plaintiffs duly filed a claim for refund in the amount of $324,149.39 of the estate tax paid, that is, a refund of that amount instead of a deficiency of $83,293.25, as shown in the Commissioner’s notice of November 20,1953. The claim was based upon some fifteen adjustments including the allegation that the marital deduction should be increased to an amount in excess of $565,700.70 and the following allegation in regard to the State inheritance tax credit:
15. The Commissioner, in his computation of the estate tax deficiency asserted in his statutory notice, failed to allow a credit for State inheritance, estate and transfer taxes paid by the taxpayer. Such taxes, in the amount of $269,800.66, have actually been paid by the Executors and the taxpayer is entitled to a credit against the basic estate tax to the extent of 80% thereof.
7. In the meantime on March 16, 1950, the executors deposited with the New York State Tax Commission the sum of $240,000 to be applied to the New York State estate tax finally determined to be due, and on December 10, 1953, deposited an additional sum of $16,500 with that commission for the same purpose.
8. On April 1,1954, the New York State Tax Commission issued a Certificate of Payment of New York State Estate Tax in the sum of $144,800, which showed that on March 16, 1950, and on December 10, 1953, as shown in the preceding finding, the plaintiffs had deposited with the New York State Tax Commission $240,000 and $16,500, respectively, to be applied against the New York State estate tax liability of the estate. That certificate of payment contained, in addition, an agreement by the plaintiffs that no part of the amount of *743 $144,800 would be refunded. On April 2,1954, the plaintiffs filed with the District Director the above certificate of payment in proof of payment of that amount of New York State estate tax and, by letter dated the same day, the plaintiffs stated that this certificate of payment would permit the $83,293.25 assessment to be abated. On December 13,1954, the New York State Tax Commission issued a similar instrument in the additional amount of $53,212.41 which contained a similar agreement that no part of the amount of $53,212.41 would be refunded. On December 15, 1954, the plaintiffs filed with the District Director that instrument in proof of payment of that amount. On December 15,1954, the plaintiffs also filed with the District Director proof of payment of Kentucky inheritance tax in the amount of $839.90 and Texas inheritance tax in the amount of $6,001.95.
9. On July 9, 1957, the Surrogate’s Court of New York County issued an order fixing the New York State estate tax at $236,150.45 and on December 23,1957, the New York State Tax Commission issued a final receipt of payment of such tax, showing total payments of $256,500, a total New York State estate tax liability of $236,150.45, a discount of 5 percent, that is $11,807.52, earned by reason of the aforesaid deposits and a resulting refund of $32,157.07.
10. As a result of the filing by the plaintiffs of the claim for refund on December 17, 1953, as shown in finding 6, a second examination of the estate tax return was conducted by the Internal Revenue Service which resulted in the issuance of a 30-day letter dated July 1,1954. A preliminary statement of tax liability attached to that letter read in part as follows:
The overassessment here results principally from partial allowance of claim for refund and allowance of credit for New York Estate Tax credit in amount of $144,800. The other items set forth in your claim for refund dated Dec. 16, 1953, and filed Dec. 17, 1953, and not allowed herein are rejected in full.
The computation of estate tax contained in that letter was as follows:

*744

11. On July 27, 1954, tbe plaintiffs filed a protest to the letter referred to in the preceding finding and subsequently informal conferences were held by the plaintiffs and the estate tax conferee. On March 8, 1955, the plaintiffs prepared and submitted to the District Director’s office a document entitled “Calculation of Tax” which showed an overassessment of $338,454.19. Included in the adjustments set out in the calculation was an increase in the credit for State inheritance taxes from $144,800 to $161,267.91, and an increase in the marital deduction to $578,281.34, in lieu of the amount of $525,958.12 allowed in the deficiency letter of November 20,1953.
12. As a result of the protest, conferences, and other considerations set out in the preceding finding, a report dated March 30,1955, was sent to the District Director of the In *745 ternal Revenue Service by the estate tax examiner showing an overassessment of estate taxes in the amount set out in the calculation of estate tax as prepared by the executors, namely, $338,454.19. The following comments appear in the report:
Original report on this estate was submitted under date of November 12, 1953, recommending deficiency in amount of $83,293.25. Representatives of the estate, upon receipt of the 90-day letter, filed Form 845 under date of December 17,1953 (within 3 years from the due date of the estate tax return) in which it was alleged that instead of a deficiency in estate tax of $83,293.25, there was on the contrary an overpayment in estate tax in the sum of $324,149.39 “and for such other or larger amounts as may be legally refundable.”
Action on the claim above resulted in the issuance of a 30-day letter as of June 9,1954, recommending an over-assessment in amount of $147,419.08 (after adjustment allowing portion of claim as well as allowance of 80% credit in amount of $144,800.00).
‡ ‡ $ *
A timely return was filed, and the claim for refund was filed within three years of the due date. On the above facts it is recommended that the claim (filed in the amount of $324,149.39 and for such other or larger amounts as may be legally refundable) be allowed in the amount of $338,454.19, the amount set forth in Part II of this report.
$ $ $ $ $
The overassessment here results principally from adjustments made with respect to Schedule F — Other Miscellaneous Property, G — Transfers During Decedent’s Life, as well as allowance of additional amount as marital deduction.
The credit for State inheritance taxes was allowed in the amount set out in the plaintiffs’ Calculation of Tax, referred to above, that is, $161,267.91.
13. The final determination of the Commissioner which resulted in the issuance of the certificate of overassessment, referred to in finding 14, was in accordance with the report of the estate tax examiner, referred to in finding 12. A comparison of the items shown on the return with those as finally determined in arriving at the net estate tax payable is shown as follows:

*746

*747 The foregoing comparison shows a net decrease in tax of $234,379.87 before allowance of credit for Federal gift taxes and foreign death duties. A reconciliation of that net decrease with the overassessment of $338,484.19, shown in finding 12, is accomplished as follows:
Net decrease in estate tax_$234,379. 87
Plus credit for Federal gift taxes and foreign death duties_ 20,781.07
Net amount of overpayment_ 255,160.94
Plus deficiency assessed March 18,1954_ 83,293.25
Overassessment of estate tax___ 338,454.19
While a credit for State inheritance tax of $208,361.51 was claimed in the original return, no amount was allowed on that account by the Commissioner in his first determination since proof of payment of such State tax had not been furnished.
14. On January 31, 1957, the Commissioner issued a certificate of overassessment in the amount of $354,710.06 which represented the amount recommended by the estate tax examiner of $338,454.19, as shown in finding 12, plus interest assessed of $16,255.87. Of that amount, $99,549.12 was applied to abate the deficiency of $83,293.25 plus interest of $16,255.87, leaving an overpayment of tax of $255,160.94. The certificate of overassessment contains the following explanation:

*748 Disposition op Overassessment or Overpayment

Abated Refunded or paid

Overassessment_$99, 549.12 Overpayment_$255,160.94
Interest- 34,002.13
The certificate of overassessment also states:
$161,267.91 of the overassessment shown herein results from the allowance of credit for payment of State estate, inheritance and legacy taxes to the State of New York. In accordance with the provisions of Section 813 (b) of the Internal Bevenue Code of 1939 that portion of the overassessment bears no interest.
15. On January 31, 1957, the Commissioner issued to the plaintiffs a refund check in the amount of $289,163.07 representing a refund of tax of $255,160.94 together with interest of $34,002.13 on $93,893.03 of the refund but did not allow interest on the balance of the refund in the amount of $161,267.91 for the stated reason, as set out above, that that portion of the refund resulted from the allowance of a credit for State taxes and that section 813 (b) of the Internal Bev-enue Code of 1939 prohibited payment of interest on refunds so resulting.
16. By letter dated February 8, 1957, the plaintiffs demanded interest on the amount of $161,267.91 from December 17,1950, and on March 11, 1957, the Commissioner rejected that demand.
CONCLUSION OP LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiffs are entitled to recover and judgment will be entered to that effect. The amount of recovery will be determined pursuant to Buie 38(c).
In accordance with the opinion of the court and on a memorandum report of the commissioner as to the amount due thereunder, it was ordered on July 22, 1960, that judgment for the plaintiffs be entered for $58,401.07.